Good morning. May it please the Court, Howard Goodfriend. I'm here today for the appellant, Mr. Raymond McDermott, plaintiff below, and I'll try and reserve five minutes of my time for rebuttal if I can. Mr. McDermott is here seeking coverage under a long-term care policy issued by the appellee's life insurance investors. For his wife's last years as an Alzheimer's patient in Canterbury Gardens in southwest Washington in their Alzheimer's special care facility. It is a boarding home that is licensed by the state of Washington, and it is authorized to provide long-term residential and nursing care to Alzheimer's patients. That is its mission, and that is what occurred in Ms. McDermott's case. There are two issues. When you talk about authorized, is it on the basis of a regulation or a letter to them or something that's equivalent to licensing? Yes, Your Honor, it is. It's based upon the fact that Washington, the policy language requires that the facility be licensed by the state as an Alzheimer's disease facility. That is not a defined term in the policy. Yes, but I'm wondering what the procedure of the state is that makes them, quote, authorized. Is it the equivalent of a license? It is the equivalent of a license. It is that they are licensed to provide the care that they disclose to the public in their disclosure form. And under Washington licensing regulations, they are authorized to become designated as to provide specialty care for dementia patients. They are authorized to disclose to the public and to provide intermittent nursing services. And once they disclose those specialty designations to the public, they have to provide those services to the public, or their license will be revoked. Let me try to ask the question again, because I think what Judge Fletcher is saying, I mean, there is no license available in the state of Washington to act as an authorized As an Alzheimer's disease facility. Yeah, okay. So what you got was some kind of authority to do certain things. Correct. Which you say add up to the same thing as a license. And so we should blink at the policy's licensing requirement. Well, I'm not asking you to blink, Your Honor. What I'm asking you to determine is that the term Alzheimer's disease facility is not defined in the policy. But it does say you have to be licensed as. Right. So the question is, what does it mean in Washington state to be licensed as an Alzheimer's disease facility? Does it come from a regulation, or does it come from a piece of paper, or does it come from a certificate? It comes from the Washington license regulations, which authorize boarding homes to act as specialty care facilities for the care of dementia patients. And it comes from the Washington license regulations, which state that once you are designated and comply with the licensing requirements to provide special services, you disclose those services in your disclosure. That is at the excerpts at 134. And that once you do, you have to provide those services under pain of losing your license. Because the state law does not have a license for an Alzheimer's disease facility, this court has to ask what does the term licensed as an Alzheimer's disease facility mean under Washington law, which becomes part of the policy. And it means licensed by the state of Washington as a facility to provide care to Alzheimer's disease patients. That is what Canterbury Gardens does. And only if you could find that the term is unambiguous, and we don't see how you could, could you adopt their position that it must mean licensed as a nursing home? Well, why shouldn't one just stop at the word license? So you're not licensed as a nursing home and not licensed as an Alzheimer's disease facility. Why shouldn't you? Because to do so would render the term licensed as an Alzheimer's disease facility superfluous. Because in Washington, and if you look at this policy on ER 390, it has a little Washington designation right at the bottom of it. It would mean that this additional coverage, and keep in mind this was coverage that was added in the year 1999. Before that, it only applied to nursing homes and licensed nursing homes. It would mean that when they added the term licensed as an Alzheimer's disease facility, that that language means absolutely nothing in the state of Washington. And that is the position of the insurance company here today. Now there's another issue that, and this is the issue upon which the district court relied, and that is the second requirement in the policy that the facility must be engaged in providing, in addition to room and board accommodations, nursing care and related services on a continuing inpatient basis. And the district court relied on the fact that the licensing statute authorizes boarding homes to provide only quote, intermittent nursing services, which it deemed fundamentally inconsistent and incompatible with the policy language which requires that the facility be engaged in providing nursing services on a continuing inpatient basis. We submit that there is no inconsistency here. The 2003 Washington legislature authorized boarding homes to expand the level of health services offered, intermittent nursing services and specialized services for dementia care. But it maintained the requirement that residents who need constant 24-hour nursing services be confined to nursing homes. There's a contrast here in the limitations imposed by the statutory requirement and definition of intermittent nursing services and that with the policy, and let me explain that. Intermittent nursing services refers to the nursing services provided by the facility to any specific individual. It references RCW 18.20.160 in the licensing statute, which states that no boarding home shall keep anyone who requires the frequent presence and evaluation of a registered nurse for more than 14 days. Contrast that with the policy requirements limiting coverage to a facility which is engaged in providing, in addition to room and board accommodations, nursing care and related services on a continuing inpatient basis. This policy language refers to a facility that is engaged in. It doesn't talk about an individual can't stay there if they need constant nursing care. It's a definition that is. The disclosure statement of Coventry Gardens says that. Right. That's the law. It says you're going to have to leave if. That's the law. 14 days have passed. Right. Unless it's hospice care. Right. And it must also mean something else other than the level of care required to mandate this transfer to a nursing home because it can be a boarding home if it did that. The language foresees that nursing care is provided in addition to room and board. It's not primarily nursing services. And that, I think, is the distinguishing feature from all the cases that the appellee has relied on. Wait a second. Are you saying that there was, in fact, more than intermittent care available at Coventry? I'm saying that if you look at the definition of intermittent nursing care. No. I mean, isn't it you can give non-intermittent care, I mean, if it's 14, if it's a problem that's resolvable within 14 days or it's hospice care. Right. If you look at the definition of intermittent nursing services, it lists all these services that you can provide, provided that you don't do this thing, which is keep people there for more than 14 days, requiring the constant care and supervision of a registered nurse. Coventry, or Canterbury Gardens has, I was following you. I know. It has five licensed practical nurses on its staff. There is a licensed, not a registered nurse, a licensed practical nurse on duty 24 hours a day. That person does not provide constant care to any individual patient, because if they did, they would have to go to a nursing home. But with respect to Alzheimer's patients, which I think is what the expansion of coverage is foreseeing, they do provide nursing services. It is a facility which is engaged in providing nursing services on a continuing inpatient basis, 24 hours a day. There are nursing services available. They're available to Alzheimer's disease patients who are residents. And they can get them whenever they need them. And that, we submit, is exactly what the policy is designed to cover. I'm going to reserve the rest of my time, unless the Court has any additional questions. Is there one? Mr. Wolfe. If I could please the Court. Jeffrey Wolfe, on behalf of the Appalachian Life Investors Insurance Company of America. Joining me is Tim Parker. I believe, Your Honors, this is a case that involves a consumer that made a choice to buy nursing home coverage. And now, looking at the policy definition, wants to expand that to a boarding home. It's as simple as that. And there are two- Let me ask you this at the outset. Yes, ma'am. Is your position that there can be no approved Alzheimer's disease facility other than a nursing home in the state of Washington? I think, as you'll see in our briefing, Your Honor, that is not our position. You also said that it would be all right for, what is it, this family- There are these adult family homes in the state of Washington that have a special licensing designation. Earlier, counsel told the Court about how this particular boarding home had a designation. It has no licensing designation. Only an adult family home in the state of Washington has such a designation. And if that- So you're saying that those two types of facilities can provide Alzheimer's disease care. I'm saying, Your Honor, that those two types of facilities can meet all of these requirements, potentially meet all these requirements of the nursing home definition. So you're looking at requirements rather than technical licensing? Well, there is a license that is required. That's one of the requirements, the licensing requirement. Because there's a licensing designation with the adult family homes, we're not going to take the position that it is not licensed as an Alzheimer's disease facility. But it also has to meet the level of care that is the nursing care requirement of the policy. And it's not one of the excluded types of facilities that's in the exclusion section of the definition. And I think the key under Washington law is that the policy has to be read as a whole from the average consumer. And if you look at all those things, the licensing requirement, the services requirements, and the types of facilities that are excluded, I don't see how anyone can claim that a boarding home, even though it has an Alzheimer's population, suddenly is transformed into an Alzheimer's disease facility. Now, I guess when you added this amendment, you wanted to cover Alzheimer's disease facilities. That is correct, Your Honor. Many states have nursing homes that are licensed as Alzheimer's disease facilities. This is a portable policy, meaning that you can take this policy to another state, and if there's a facility that has the proper license, provides the proper level of care, and it's not excluded, you read all that together, then it would certainly be covered, Your Honor. And there are a number of those facilities. In Texas, for example, nursing homes and units of nursing homes are licensed as Alzheimer's disease facilities. That was the intent of that particular language. Now, if the state of Washington were to say, okay, we are going to license boarding homes as Alzheimer's disease facilities, would that answer the problem? That doesn't completely solve the issue, Your Honor, and I think it would take legislative change. We can't rewrite the policy. I'm just trying to make sure I understand exactly where your position is. You were saying that they cannot provide the continuing nursing care? That's correct. Would that be necessary in an Alzheimer's facility? Yes, it would. All of the courts that have looked at these issues have said that you can't just look at the license requirement alone or just look at the minimum services requirement alone. You've got to look at all those requirements that are in the policy definition. The Geary case, for example, that we've cited to the court was an assisted living facility, which is the Texas equivalent of a Washington boarding home. That facility also had a certification as an Alzheimer's disease facility, but the court noted that no one could receive care at that facility, nursing care, for more than 30 days. It couldn't be provided on an ongoing basis, and the type of nursing care that is provided in a nursing home, which is what that insured purchased, could not be provided in that type of facility. So what we're looking at, then, are nursing homes that may also be licensed as Alzheimer's disease facilities. I think if the Washington legislature wanted to completely address the issue, Your Honor, they would provide a licensing designation to the boarding homes and also allow them to provide continuing instead of intermittent nursing care. Well, can you address that a little more clearly? Because I understand that in order to qualify as a covered Alzheimer's disease facility or even as a nursing home, you have to then go on, A, they have to be licensed either as such or functional equivalent, is engaged in providing, in addition to room and board, nursing care and related services on a continuing inpatient basis. So that doesn't say it has to be a registered nurse. That's correct, Your Honor. The policy itself contemplates that nursing includes LVNs and LPNs. That's correct, Your Honor. Indeed, the policy goes on and requires that there be a nurse, divine, include all three of those categories, who is on duty or on call at all times, which is the case here. So what is it about continuing nursing care and related services that can't be provided or couldn't be provided by this facility that would qualify under this policy? Having a nurse, Your Honor, at this facility 24 hours a day does not mean that that nurse is authorized to provide continuing nursing care. What is the nursing care? It is intermittent nursing care. That's what the regulations provide. I think perhaps one of the better illustrations of this is on page 29 of the appellant's brief. They talk about the legislative history. And they talk about in the legislative history of these regulations that boarding homes are precluded from providing convalescent or chronic care or both, that's what's provided in a nursing home, for a period in excess of 24 consecutive hours. So the scope of care, the level of care is provided. There's a temporal basis. We've already mentioned the 14 days. You can't go beyond 14 days in a boarding home without the patient having to be transferred to another type of facility. And then the regulations themselves. But that does not apply to dementia patients, right? I'm sorry, I didn't hear you. The movement after 14 days does not apply to Alzheimer's. Yes, it does, Your Honor. Any patient that has a temporary illness that requires nursing care. Now, I want to put this in context a little bit for the Court. The Alzheimer's facilities here in the state of Washington, in these boarding homes, they're built a particular way. They have, for example, locking doors and means of letting the staff know about ingress and egress of the residents. That's why they serve an Alzheimer's population. The special training that's provided isn't by no means nursing care. It is training so that you understand some of the mental aspects of the Alzheimer's disease in assisting those folks with the activities of daily living. And so it's very different. In looking at the nursing care, when we're talking about the intermittent, if you look at the disclosure, which is one of the exhibits I've given to this Court, in terms of the key record excerpts, it says that they may but are not required to provide intermittent nursing care. And also within that disclosure, it talks about if you need continuing, which is the same word that the policy uses, evaluation of a nurse, then you're going to have to be transferred. And so, Your Honors, I believe as a matter of law, when you look at the ---- But wait a minute. The concern I have is the policy says is engaged in providing, which seems facility specific. Okay? So they're in a facility that is engaged in providing nursing care and related services on a continuing inpatient basis. Intermittent, which you ---- It doesn't say, it doesn't adopt the word non-intermittent, but you're looking at ---- I agree. In order to ---- I look at what intermittent care can include, and it says intermittent care can include medication administration, administration of health care treatments, diabetic management, non-routine ostomy care, tube feeding, and nurse delegation. Okay? So they can do all that, and the policy says that the nursing care can be provided by RNs, LVNs, LPNs. So the policy is saying that if you're in a facility that can give you the nursing care and related services that you need for Alzheimer's on a continuing basis, and there's a nurse who can do those kinds of activities, I'm still trying to understand why it is that, as a matter of definition, that this facility doesn't come within it. At least it could if the facts were developed that the extent of the care that this facility provides is within what an Alzheimer's patient would need and can be provided. Well, there's a question between the care that's provided, which may be assistance with activities of daily living, which is a different kind of care than nursing care, which is provided by the aides that are at these facilities, and the disclosure on this particular facility I want to point out to the court, and I've included it as one of the important exhibits. The boxes check no, that there is no delegation at this particular facility. In other words, you have one nurse for 64 residents. In an eight-hour shift, for example, if you have one licensed practical nurse for the 64 residents and she was to provide some nursing care to each of the patients, she would be spending seven to eight minutes with each of those patients. Something I don't quite understand. Very different than a nursing home. Yes, ma'am. You decided to cover Alzheimer care facilities. Those patients may be physically quite well, and so they really don't need someone who's there taking their temperature twice a day and doing this and that. And this care can probably in a boarding home be provided at less cost than in a high-level nursing home. So it seems like a very odd policy. Well, I think that, Your Honor, that is why we offered the rider that went with this policy, the home and community care rider, so that if it was the choice of the insurer that they wanted coverage for that type of facility, a lesser facility than a nursing home. Yes, but you said that you're going to cover Alzheimer's facilities, and this is completely adequate as an Alzheimer's facility. Well, we're going to cover Alzheimer's facilities, Your Honor, that meet all the requirements of this policy definition, which is a nursing home. The coverage that was purchased was a nursing home. If it's a nursing home, why did you add the clause or an Alzheimer's diseases facility? It's redundant. The reason is some states license things. Did you tell these people that, oh, this was because of Texas, and even though the policy is being offered to you in Washington, it only counts in Texas? So if you think you're going to get Alzheimer's coverage under this policy now, that's only if you move. It's only really giving you the benefit as if you go to Texas. That's not true here, because, for example, in the state of Washington, you have a licensing designation for these adult family homes. If you have one nurse for the eight patients that are at that adult family home, they have the same level of nursing care as a nursing home, then you would have a covered facility. They're not called an Alzheimer's disease facility, are they? But they have a special licensing designation to provide that sort of care, which is something that a boarding home simply does not have in the state of Washington. And the boarding home cannot provide the equivalent level of what you would consider an Alzheimer's disease facility under the other category? They cannot provide the equivalent of an Alzheimer's disease facility, which provides nursing care on a continuing inpatient basis. How do we know that? The district court ruled it as a matter of law that they couldn't. I believe that these regulations that are cited for the court that talk about intermittent nursing care, and I believe there's a big difference between intermittent and continuing, and that's a difference that does have a distinction. And to the district court, that was an important distinction. He concluded that the parties agreed that this facility could never provide continuing care to the patients that needed nursing care. They had to be moved out of the facility after 14 days, the only care that could be provided. Let me tell you what my problem is. You describe what an Alzheimer's facility is. I know what an Alzheimer's facility is. I mean, I know that they – and I know what a nursing home is, and they are different. They are not equivalent for the very reason that Judge Fletcher says, that Alzheimer's patients may be perfectly physically well. It's the wandering aspect, the forgetfulness aspect. And to say that the language in this policy is so clear that what it takes for an Alzheimer's disease facility has to be the equivalent of a nursing home for somebody who's got colorectal cancer and is dying is just – it doesn't make any sense. So if on the facts of this facility they could be shown to provide what is necessary and what would be recognized under what you would consider an Alzheimer's disease facility if they had the different licensing designation from Washington, if they could show that they provide that level of service, why wouldn't that be covered? My time's expired. Can I respond? I hope so. They would not be covered if they simply had – if you're talking about being an Alzheimer's disease facility, these boarding homes market themselves as Alzheimer's care facilities. The care, as you all have noted, is for oftentimes not needing the nursing care that's present in a nursing home. Maybe, but this is fact specific. This is if the facility is engaged in. This is summary judgment. I'm trying to understand what you're saying. If I was going to focus on the specific testimony that I think deals with this issue, I would look at the testimony of Cindy Bryant, which I think I've included in this fact of the material. Mrs. Bryant agrees that even though they have a nurse there 24 hours a day, that nurse can only provide intermittent nursing care. The regulatory expert that the McDermott's hired in this particular case, Ms. Thompson, she similarly has testimony that talks about these same limitations, the temporal, the 14 days. She talks about the intermittent from the regulations, that continuing cannot be provided. The disclosure says that they don't provide continuing care under certain circumstances. Even if you reach the level of hospice care, the regulations say that that care has to be imported into the facility. The facility itself can't provide the nursing care for the end-of-life hospice care that is allowed in these facilities, but the facility itself cannot do that. This facility has one nurse for 64 patients. That nurse is overseeing all of the assistance with activities of daily living. That's not adequate staffing to provide nursing care on a continuing inpatient basis. Thank you. Thank you. Thank you, Mr. Wolf. Mr. Goodfriend, I'll give you several minutes to equalize the timeout. My clock shows I have less than five minutes, and I'll do my best not to run over, Your Honor, unless the Court has additional questions. The fundamental question I think remains unanswered. It's been posed by each member of the panel here, and that is why did the Appellee Life Insurance Investors modify its policy to include an additional designated facility that provides coverage for Alzheimer's disease facilities? The answer that, well, because some states were doing that in the context of their nursing home licensing, doesn't really answer the question, because if you're already licensed as a nursing home, you can have all kinds of units within your nursing home. You're still licensed as a nursing home, and you still are going to get coverage. You did not need to modify the policy. I think our brief outlines a little bit, and I sort of wish I had the Alzheimer's Association here on my shoulder to amicus the Court, but I don't think I need to do that because I think the legislative history and the social history is pretty clear of what was going on in 1999 when this additional coverage was added. States were doing lots of things, and Washington was one of them, to make the care of Alzheimer's patients less institutionalized, more community-based, less expensive, and more humane. That's what Washington did, and that's also what Texas did, by the way. Texas, where the appellee is based, did not just designate units within nursing homes as Alzheimer's disease facilities, and we cite the statute in our brief. They provided that assisted living facilities, assisted living facilities, not nursing homes, can obtain a licensing designation as an Alzheimer's disease facility. That's what Texas did, and that's what lots of other states did, but they didn't all do it by licensing. They did it, many of them, the way Washington did, in terms of requiring certain disclosures to be made, and you will maintain your license if you qualify for the specialty designation by training staff, by specializing your facility to care for Alzheimer's disease patients, and then maintaining those standards that you've then disclosed to the public. The argument that Washington has a licensing designation for adult family homes as dementia care units, and that might somehow qualify, I think, as a red herring here, because the appellee, they know the difference between adult family homes and boarding homes. Boarding homes are facilities. As a matter of fact, the licensing statute for adult family homes says these are in abodes. They're homes. Actually, just a really dumb question. Is your position that they were buying Alzheimer's disease facility coverage, not buying nursing homes? In 1996 ñ Is that what it boils down to? Well, in 1997, when they bought the policy, the disclosure specifically said that it covers care for Alzheimer's disease, but, of course, in 1997, that was primarily done in nursing homes. And only as time went on in the 90s and early days of this century did that expand to different types of facilities, and that's when they changed the policy. So when they bought the policy ñ They added the phrase on to the policy, but I just want to clarify, because are you saying there's a whole different sort of analysis that goes along with the Alzheimer's disease facility component? So it's unhinged to the nursing home coverage that was bought? My position is this, that the policy language requires you to be either licensed as a nursing home or licensed as an Alzheimer's disease facility. Neither of which is true, so we have to go beyond that. Right. So the question is, what does licensed as an Alzheimer's disease facility mean? And our position is ñ Whether or not it's a nursing home. Whether or not it's a nursing home. Freestanding deal. It's a different entity. It's another animal, or else the language would be superfluous. So if you were on the licensed as a nursing home prong, would it be your position that you could look to say, well, another type of facility is a functional equivalent of a nursing home? No. Why can you do it with respect to the Alzheimer's? Because nursing home is an unambiguous term. Licensed as a nursing home. It excludes a boarding home, explicitly, both in the statute and the policy. Well, it excludes a boarding home that does certain things, that provides only, you know, yeah, you can't get licenses both. That is true. Right. So there's a difference. There's a difference. And nursing home is unambiguous. Alzheimer's disease facility is ambiguous because it's not defined in the policy, and it's not defined by Washington law. Right. So our position is you have to interpret that term in light of Washington law. Without the license component. You just read that out. No, you read it in. Licensed as a facility that is authorized to care for Alzheimer's disease patients under Washington law. That is what Canterbury Gardens is. It is a licensed boarding home that, because it has met the specialty standards and training standards and discloses that it provides dementia care. Apply to a driver's license. I mean, I just am a terrific driver. But wouldn't you lose your license if you provided dementia care? I don't have a license. I'm just saying I'm a terrific driver. My eyesight is 20-20. I know how to parallel park. You know, I don't bump into people and all that stuff. So I don't need a license. I've got all the training, all the ability that I need to have a license. I just don't have it. Does that fly? No, it doesn't. Okay, so what's the difference? Why does this work? Because Canterbury Gardens has a license. It has a license as a boarding home. Yes. And it can only, which is not a nursing home. Yeah. But it has a license as a boarding home, and under Washington law, specialty care boarding homes that are authorized to provide dementia care can only keep their boarding home license if they provide those services. Thank you. Thank you both counsel for a very helpful argument. I appreciate it. And the matter just argued will be submitted. The court will stand in recess for the day.
judges: Fletcher, Rymer, Fisher